**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MICHAEL W. BRADLEY, | ) | CASE NO. 5:26 CV 1225 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| DAVE YOST, et al., | ) | AND ORDER |
| | ) | |
| Defendants. | ) | |

The Defendants' Motion to Dismiss (Doc. No. 7) is before the Court.  Plaintiff opposes the Motion (Doc. No. 8).

Plaintiff filed this action under 42 U.S.C. §1983 against the Ohio Attorney General,[1] the Office of the Ohio Attorney General, Office of the Attorney General Director of Collection Enforcement, and the Ohio Ethics Commission.  His Complaint contains very little information; however, it appears that the Ohio Ethics Commission is attempting to collect a debt and Plaintiff objects to the collection.

Prior to filing this action, Plaintiff filed a substantially similar action in the United States District Court for the Southern District of Ohio against the Ohio Attorney General, the Ohio Ethics Commission, and other Defendants based on the same incidents and occurrences.  *See*

---

[1] Plaintiff identifies Dave Yost as the Ohio Attorney General.  Yost resigned from that position effective June 7, 2026.  Andy Wilson is now the Ohio Attorney General.

*Bradley v. Ohio Ethics Comm'n,* No. 2:23 CV 0024 (S.D. Ohio Aug. 22, 2023).  This prior case sheds light on the factual basis for this action.

Plaintiff filed to run for election as a write-in candidate for Ohio Secretary of State in 2018.  *Id.*  Pursuant to Ohio Revised Code § 102.02(C), candidates for office in Ohio are required to pay a $95.00 filing fee and complete a personal Financial Disclosure Statement for the previous calendar year.   That document is filed with the Ohio Ethics Commission.  *Id.* (Doc. No. 28 at PageID #: 237).  Upon receiving Plaintiff's Application, the Ohio Ethics Commission discovered that he had not met either of these requirements and reminded him that he had to do so before October 17, 2018.  *Id.* (Doc. No. 28 at PageID #: 237).  Plaintiff initially refused to do so and instead provided them with an affidavit of indigency, copies of a Social Security benefits statement and 1099 tax document for 2017.  The Ohio Ethics Commission returned the documents to him and instructed him to complete and file the proper financial disclosure form. *Id.* (Doc. No. 28 at PageID #: 237).

When Plaintiff still had not completed the proper financial disclosure form, the Ohio Ethics Commission sent him a final letter on February 8, 2019 warning him that if he did not file the proper form by February 22, 2019, a formal complaint could be filed before the Ohio Ethics Commission claiming he knowingly failed to file a complete financial disclosure statement for calendar year 2017.  *Id.* (Doc. No. 28 at PageID #: 237).  The Ethics Commission also informed him that knowingly failing to file a complete financial disclosure statement is a criminal offense in violation of Ohio Revised Code § 102.02.  A person convicted of this offense could be fined up to $ 250.00 and/or sentenced to serve a maximum of 30 days in jail.  The Ethics Commission informed him that if he did not file the financial disclosure statement on the correct form by

February 22, 2019, the Ohio Ethics Commission was required to file a criminal complaint against him.

Plaintiff still did not comply, and the Ohio Ethic Commission filed a formal complaint against him.  The Ethics Commission set the matter for a hearing on August 15, 2019 in Columbus, Ohio.  Six days before the hearing, on August 9, 2019, Plaintiff filed a lawsuit against the Ohio Ethics Commission and four of its members in this federal court.  *See Bradley v. Ohio Ethics Commission*, No. 5:19 CV 1815 (N.D. Ohio Oct. 3, 2019).  In that action, he asked this Court for a temporary restraining order, indicating that if the hearing is permitted to take place, he could be fined $ 285.00 and/or be jailed for up to 30 days.  Plaintiff does not indicate what happened at that hearing, but based on subsequent events discussed below, it appears that a $285,00 fine was imposed.  Plaintiff asked to voluntarily dismiss his federal case on September 18, 2019.  The Court granted the Motion on October 3, 2019.

The Ohio Ethics Commission found cause to believe that the formal complaint filed against Plaintiff was not frivolous, and there was reasonable cause to believe that the facts alleged in a complaint constituted a violation of Ohio Revised Code §102.02.  The Ethics Commission reported its findings to the Franklin Municipal Court Prosecutor who brought criminal charges against him in the Franklin County Municipal Court for failing to file a Financial Disclosure Statement in violation of Ohio Revised Code § 102.02.  *See State of Ohio v. Bradley*, No. 2020 CR B 004556 (Franklin Mun. Ct. filed Mar. 13, 2020).  The Franklin County Municipal Court issued a BMV Warrant block on July 27, 2020, blocking his driver's license and registration.  *Id.* (Doc. No. 28 at PageID #: 237).  That Warrant was cancelled, and the case was dismissed by the prosecutor in September 2025.  *Id.* (Doc. No. 28 at PageID #: 237).

While his criminal proceedings were still pending, Plaintiff brought an action in the United States District Court for the Southern District of Ohio challenging the State's fine assessment and enforcement actions.  The Southern District dismissed the case on August 22, 2023, stating that the Eleventh Amendment deprived the Court of subject matter jurisdiction over claims against the State of Ohio.  The Court determined the other Defendants were entitled to prosecutorial and judicial immunity.  *Id.*  Plaintiff appealed this judgment to the United States Six Circuit Court of Appeals on September 25, 2023.  The Sixth Circuit determined that his appeal was untimely filed and dismissed it on November 16, 2023.

The Ohio Ethics Commission certified Plaintiff's account to the Ohio Attorney General for collection of the fine plus interest.  On November 22, 2025, the Ohio Attorney General's Office sent Plaintiff a collections letter demanding payment in ten days of $ 313.63, which consists of the certified amount of $ 285.00 plus $ 0.12 interest and $ 28.51 in fees.  Although the letter included an itemization on the second page, Plaintiff replied with a written dispute of the debt and demanded an itemized statement from the Ohio Ethics Commission.  On December 22, 2025, the Ohio Attorney General's Office sent a final letter demanding payment of $ 315.70, consisting of the certified amount of $ 285.00 plus $ 2.00 interest and $ 28.70 in fees.  Plaintiff responded on January 9, 2026 claiming the Ohio Attorney General's Office had "flagrantly disregarded [his] previous request for a reasonable explanation and itemized statement of how this 'debt' was occurred [sic]."  (Doc. No. 1-4 at PageID #: 13).  He further argued that "for a 'debt' to be legal – there must be 'consideration' [and the Attorney General's Office had] not provided what consideration was involved for the debt to occur."   (Doc. No. 1-4 at PageID #: 13).  He concluded that the claim is therefore "invalid and illegitimate." (Doc. No. 1-4 at PageID #: 13).  Plaintiff does not allege whether the State of Ohio took any further steps toward

collecting this debt; however, he sent another letter to the Ohio Attorney General stating that because his demands for a specific, itemized statement of the charges indicating precisely what, where and when the debt was incurred, "litigation is the only effective remedy to address this issue."  (Doc. 1-6 at PageID #: 15).

Plaintiff filed this current lawsuit on May 28, 2026.  Although he contends that he is asserting claims under 42 U.S.C. §1983, the only actual legal claims he asserts in his Complaint are for alleged violation of Ohio Revised Code §§ 2913.01(A) and 2905.11(A)(5), which pertain to the crimes of fraud and extortion.  He claims this Court has subject matter jurisdiction over this action because all of the Defendants are Ohio residents or political subdivisions of the State of Ohio.  He seeks monetary damages.

Plaintiff also asks this Court to declare that his debt is invalid because the statute under which it was assessed violates the Fourth Amendment.  He does not explain how the Fourth Amendment applies to this situation.  He contends only that Ohio Revised Code §102.02 requiring candidates for public office in Ohio to file a financial disclosure statement should only apply to incumbents.  He reasons that if the Court determines that this statute is unenforceable, the debt the Defendants are attempting to collect also will be invalid.

The Defendants filed a Motion to Dismiss.  They contend that the Eleventh Amendment bars Plaintiff's claims, and this action is also barred by the doctrine *res judicata*.  Finally, Defendants assert that the Plaintiff's Complaint fails to state a claim upon which relief may be granted.

## II.        Standard of Review

When deciding a Motion to Dismiss under Federal Civil Rule 12(b)(6), the function of the Court is to test the legal sufficiency of the Complaint.  *See Mayer v. Mulod*, 988 F.2d 635,

638 (6th Cir. 1993).  The Supreme Court in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) and recently in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-678 (2009) clarified the law regarding what the Plaintiff must plead in order to survive a Motion to Dismiss under Rule 12(b)(6).

When determining whether the Plaintiff has stated a claim upon which relief can be granted, the Court must construe the Complaint in the light most favorable to the Plaintiff, accept all factual allegations as true, and determine whether the Complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555.  The Plaintiff's obligation to provide the grounds for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*.  Although a Complaint need not contain detailed factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the Complaint are true." *Id*.  The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

The Court in *Iqbal*, 556 U.S. at 677-678, further explains the "plausibility" requirement, stating that "a claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Furthermore, "the plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id*.  This determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

### III.      Analysis

#### A.  Subject Matter Jurisdiction

As an initial matter, Federal Courts do not have a universal authority to intervene in a purely state law matter and declare a fine imposed by a State for a violation of a State statute to be invalid.  Federal courts are courts of limited jurisdiction, and, unlike state trial courts, they do not have general jurisdiction to review all questions of law.  *See Ohio ex rel. Skaggs v. Brunner*, 549 F.3d 468, 474 (6th Cir. 2008).  Instead, they have only the authority to decide cases that the Constitution and Congress have empowered them to resolve.  *Id*.  Consequently, "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377(1994) (internal citation omitted).  Furthermore, federal courts are always "under an independent obligation to examine their own jurisdiction," *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231(1990) and may not entertain an action over which jurisdiction is lacking.  *See Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701 (1982).  Defects in subject matter jurisdiction cannot be waived by the parties and may be addressed by a Court on its own motion at any stage of the proceedings.  *Curry v. U.S. Bulk Transport, Inc.*, 462 F.3d 536, 539-40 (6th Cir. 2006); *Owens v. Brock*, 860 F.2d 1363, 1367 (6th Cir. 1988).

Generally, the Constitution and Congress have given federal courts authority to hear a case only when diversity of citizenship exists between the parties, or when the case raises a federal question.  *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).  The first type of federal jurisdiction, diversity of citizenship, is applicable to cases of sufficient value between "citizens of different states."  28 U.S.C. § 1332(a)(1).  To establish diversity of citizenship, the

Plaintiff must establish that he is a citizen of one state and all of the Defendants are citizens of other states.  The citizenship of a natural person equates to his domicile.  *Von Dunser v. Aronoff*, 915 F.2d 1071, 1072 (6th Cir. 1990).  The second type of federal jurisdiction relies on the presence of a federal question.  This type of jurisdiction arises where a "well-pleaded complaint establishes either that federal law creates the cause of action or that the Plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law."  *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 27-28 (1983).

Diversity of Citizenship is not present in this case.  All of the parties appear to be citizens of Ohio.   If federal jurisdiction exists in this case, it must be based on a claimed violation of federal law.

A Plaintiff properly invokes federal question jurisdiction under 28 U.S.C. § 1331 when he "pleads a colorable claim 'arising under the Constitution or laws of the United States.'" *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 513 (2006).  Jurisdiction is not defeated by the possibility that the Complaint might fail to state a claim upon which relief may be granted, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (internal quotation marks and alterations omitted); however, a claim invoking federal-question jurisdiction under 28 U.S.C. § 1331 may be dismissed for want of subject-matter jurisdiction if it is "immaterial and made solely for the purpose of obtaining jurisdiction or is wholly insubstantial and frivolous." *Arbaugh*, 546 U.S. at 513 n. 10 (quoting *Bell v. Hood*, 327 U.S. 678, 682-83 (1946)).  Similarly, a Complaint may be dismissed for lack of subject-matter jurisdiction when the claim is "totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (the Court is deprived of subject matter jurisdiction where

the Complaint is "so insubstantial, implausible, foreclosed by prior decisions of this Court, or

otherwise completely devoid of merit as not to involve a federal controversy.").

In this case, Plaintiff asserts two legal claims, both based on violations of Ohio criminal

law statutes. Not only can those state law claims not establish a basis for federal question

jurisdiction, but they are frivolous and completely devoid of merit. As a rule, criminal statutes

give rise to a right of prosecution by the State but, in the absence of a specific provision to the

contrary, do not create a private right of action for an individual to seek damages in a civil suit.

The only mention of a federal claim is found in Plaintiff's request for declaratory relief

where he asks this Court to declare Ohio Revised Code § 102.02 and his fine imposed for

violating that statute to be contrary to the Fourth Amendment. He offers no explanation for how

or why he believes the Fourth Amendment is implicated. This is stated solely as a legal

conclusion with no foundation or elucidation. Plaintiff cannot convert a claim that is solely a

question of state law to a federal question simply by inserting a vague reference to the United

States Constitution. This claim is so unsubstantial, devoid of merit and frivolous that it fails to

establish a basis for federal subject matter jurisdiction.

**B. *Res Judicata***

Even if this Court had subject matter jurisdiction, this action would be barred by the

doctrine of *res judicata*. The term "*res judicata*" literally means "a matter [already] judged."

BLACK'S LAW DICTIONARY (11th ed. 2019). The doctrine of *res judicata* bars duplicative

litigation based on the same event or events. *Montana v. United States*, 440 U.S. 147, 153

(1979); *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 (1979). When one court has

already resolved the merits of a case, another court will not revisit them. *Id*. The doctrine of *res*

*judicata* therefore precludes a party from bringing a subsequent lawsuit on the same claim or

from raising a new defense to defeat the prior judgment.  *Gargallo v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 918 F.2d 658, 660 (6th Cir. 1990).  It bars relitigation of every issue actually brought before the Court and every issue or defense that should have been raised in the previous action.  *Id*.  Furthermore, *res judicata* bars Plaintiff from relitigating in federal court claims and issues that were previously decided by a state court.  *Bragg v. Flint Bd. of Educ*., 570 F.3d 775, 776 (6th Cir. 2009).

The doctrine of *res judicata* consists of two separate preclusion concepts, issue preclusion and claim preclusion. *Heyliger v. State Univ. and Cmty. Coll. Sys. of Tenn*., 126 F.3d 849, 852 (6th Cir.1997).  Claim preclusion generally refers to the effect of a prior judgment in foreclosing successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.  *New Hampshire v. Maine*, 532 U.S. 742, 748-49 (2001). Issue preclusion generally refers to the effect of a prior judgment in foreclosing successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, whether or not the issue arises on the same or a different claim. Id.

This case is barred by both issue and claim preclusion.  Plaintiff already filed a lawsuit against the Ohio Attorney General and others claiming that the Defendants violated his First, Fourth, Fifth, Sixth and Fourteenth Amendment rights by enforcing Ohio Revised Code §102.02. The Southern District of Ohio dismissed the case stating that the Eleventh Amendment barred suit against the State of Ohio and its officers sued in their official capacities.  Those claims have been addressed.  Moreover, although Plaintiff now changes his approach to challenge the collection of the fine he owes for refusing to comply with Ohio Revised Code §102.02, the issue of the State's ability to be sued in this matter was decided by the Southern District of Ohio.  This

Court must give full faith and credit to those judgments.  *Res judicata* bars relitigation of this dispute.

### C.  Eleventh Amendment

Finally, this action is also subject to dismissal for the same reasons that the Southern District of Ohio cited when it dismissed the claims against the Ohio Defendants in this first action regarding this matter.  All of the Defendants are either Ohio agencies, or officers of the State of Ohio sued in their official capacities.  The Eleventh Amendment is an absolute bar to the imposition of liability upon a State, and its agencies, divisions, departments, officials, and other "arms of the State." *Dubuc v. Michigan Bd. of Law Examiners*, 342 F.3d 610, 615 (6th Cir. 2003); *see also Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1977) ("[I]t has long been settled that the reference [in the Eleventh Amendment] to actions 'against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities."). *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984)).

This bar to suit applies notwithstanding the nature of relief sought.  *Pennhurst*, 465 U.S. at 100 (citing e.g. *Missouri v. Fiske*, 290 U.S. 18, 27, 54 S.Ct. 18, 78 L.Ed. 145 (1933)); *see also Ernst v. Rising*, 427 F.3d 351, 365 (6th Cir.2005) ("When a State is sued by name in a lawsuit, sovereign immunity bars the lawsuit regardless of whether monetary relief is sought or not ..."). In other words, the Eleventh Amendment "bars all suits [in the federal courts], whether for injunctive, declaratory or monetary relief, against the state and its departments." *Thiokol v. Dep't of Revenue*, 987 F.2d 376, 381 (6th Cir. 1993).

Three narrow exceptions to Eleventh Amendment sovereign immunity exist. *Lee-Thomas v. Prince George's Cnty. Pub. Sch.*, 666 F.3d 244, 248-49 (4th Cir. 2012). First, the State may

waive its right to immunity and consent to suit. *Lapides v. Bd. of Regents Univ. Sys. of Ga.*, 535 U.S. 613, 618 (2002). A State may also be sued when Congress has explicitly abrogated the reach of the Eleventh Amendment. *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001). The final exception to the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (citing *Ex Parte Young*, 209 U.S. 123, (1908)). This exception "applies only to prospective relief, does not permit judgments against state officers declaring that they violated federal law in the past, and has no application in suits against the States and their agencies, which are barred regardless of the relief sought. *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993).

None of these exceptions apply here. The State of Ohio has not consented to suit, and Plaintiff has not cited to any federal statute by which Congress has abrogated the State of Ohio's sovereign immunity. Moreover, all of Plaintiff's legals claims are stated as violations of Ohio Criminal statutes. Congress cannot abrogate a State's sovereign immunity from state law claims. *Pennhurst*, 465 U.S. at 120. Finally, the *Ex Parte Young* exception does not apply. Plaintiff's claims focus on past behavior and a debt that was already assessed. He asks this Court to invalidate his debt by declaring the statute under which it was assessed unconstitutional. Moreover, the claim is asserted against an Ohio agency and Ohio officials sued in their official capacities. The Eleventh Amendment bars suit against the Defendants regardless of the relief sought.

**IV.      Conclusion**

Accordingly, The Defendants' Motion to Dismiss (Doc. No. 7) is granted and this action is dismissed.  The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[1]

IT IS SO ORDERED.


Date: <u>August 13, 2026</u>              <u>/s/ John R. Adams</u>
                                         JOHN R. ADAMS
                                         UNITED STATES DISTRICT JUDGE

---

[1]    28 U.S.C. § 1915(a)(3) provides:

> An appeal may not be taken *in forma pauperis* if the trial court certifies that it is not taken in good faith.